## THE I. J. MERRITT.

(District Court, S. D. New York. January 23, 1901.)

SALVAGE—SALVED VESSEL BECOMING SALVOR—AMOUNT OF COMPENSATION.

The steamer S. having stranded, the W. Co., as salvor, made a contract to endeavor to get her off and deliver her at N. for 60 per cent. of the value recovered. The contract provided that such company should have the requisite possession and control of the property, and the reasonable use of material belonging to the vessel. Having got her off and made temporary repairs, the company started her for N. in tow of the steam tug M. The tug becoming temporarily disabled, by losing her smokestack and rupturing a steam pipe, it was arranged that the S. should take her in tow to a place 178 miles away, which was accomplished in 36 hours. The M. was worth $46,000. The S., which was afterwards taken to N., there sold for $45,000. *Held* that, while the owner of the S. was entitled to compensation for the service rendered the M., $750, besides an allowance for extra coal and oil consumed, was enough; the danger to the M. not being serious, and only the captain and engineer of the S. being aboard her, she being otherwise manned by the W. Co.'s men.[1]

In Admiralty.

Benedict & Benedict, for claimant.
Wing, Putnam & Burlingham, for libelant.

BROWN, District Judge. The above libel is filed by the owner of the steamer St. Georg to recover salvage compensation for services rendered to the steam tug I. J. Merritt in October, 1900, upon

---

[1] Salvage awards, see note to The Lamington, 30 C. C. A. 280.

an accident happening to the Merritt while she was engaged in towing the St. Georg in execution of a salvage service to the latter.

The St. Georg is a German steamship about 323 feet long and 2,593 tons gross. Having stranded at Daiquiri, Cuba, a contract was made by her master on September 25, 1900, at Santiago de Cuba, by which the Merritt & Chapman Derrick & Wrecking Company, as salvors, were to endeavor to get her off and deliver her in New York upon the basis of 60 per cent. of the value recovered —"no cure, no pay." By the contract it was provided: "That such company shall have the requisite possession and control of the property and be entitled to the reasonable use of material belonging to the vessel."

Wrecking vessels were dispatched by the company, the St. Georg was got off, taken to Santiago, where she received temporary repairs, and was thence taken in tow for New York by the steam wrecking tug I. J. Merritt. The Merritt went ahead on a towing hawser, and the St. Georg also used her own steam. On the morning of October 25th while passing Cape Maysi in a heavy rolling sea and a northeast wind at about 6 a. m. when 22 miles north from the cape, the Merritt lost her smokestack and ruptured one of the connecting steam pipes to her boiler, thereby becoming temporarily disabled and helpless. It was thereupon arranged that the St. Georg should take the Merritt in tow to Neuvitas on the north shore of Cuba, about 178 miles distant. This was successfully accomplished after a towage service by the St. Georg of about 36 hours. On board the St. Georg were her master and first engineer, the rest of her crew having been discharged. During the prior salvage operations and the towage service she was otherwise manned by the wrecking company. The only competent navigator and engineer on board of her were her master and first engineer. It was claimed by witnesses for the defendant that the steam pipe could have been repaired and was repaired in a few hours, and also that a temporary smokestack might have been arranged in the course of 5 or 6 hours. The witnesses who testified to this, however, had never made such a temporary stack, and the materials on board for making one were comparatively weak and insecure. There was no attempt to make a stack and the Merritt was taken into Neuvitas wholly by the towage of the St. Georg. From Neuvitas the St. Georg was subsequently taken to New York by the wrecking company by other means, where she was sold and realized $45,000; the value of the Merritt and her machinery and contents at the time of the accident was about $46,000.

The provision of the contract that the wrecking company should have the "requisite possession and control of the property," and "the reasonable use of the material belonging to the vessel," had reference only to the objects of the contract, viz. rescuing the St. Georg and delivering her to her owners; not to any use of the St. Georg for the salvage of the company's own boats from the consequences of a sea peril. So far as the St. Georg was used primarily for the latter purpose and not for her own rescue or safety, that

use was, I think, outside of anything contemplated or expressed in the contract; and the owners should therefore be compensated therefor on the same principle that passengers and tugs or tows may become salvors in extraordinary circumstances in acting outside of the line of their duty. See Towle v. The Great Eastern, 24 Fed. Cas. 75, 82, and cases cited; The Alaska (D. C.) 23 Fed. 597, 604; The Clarita, 23 Wall. 1, 19, 23 L. Ed. 146. And this right is not, I think, diminished by the fact that the Merritt, after her rescue and repair, might be used for the return of the St. Georg to New York.

After the accident to the Merritt, the company no doubt had the right to send the St. Georg into Neuvitas, as it was not safe to send her alone to New York. She was able to go to Neuvitas, and in towing the Merritt thither she took a heavy incumbrance, not primarily for her own benefit, but for the immediate benefit of the Merritt, which for the time being did not aid but rather endangered her own safety in going there. The owner is therefore entitled to some allowance for this use of his property for the Merritt's benefit outside of the contract.

Although I think the evidence for the claimant greatly exaggerates the Merritt's means of immediate repair at sea, I do not think upon all the other circumstances in proof that the danger to the Merritt was very serious; and considering the further fact that the wrecking company was entitled to 60 per cent. of the value of the vessel, and that only the captain and engineer of the St. Georg were on board of her and that the Merritt Company's men otherwise manned the St. Georg, I think that $750, and $185 in addition for extra coal and oil consumed, will be a reasonable and sufficient allowance to the libelant for the use of his property for this salvage service.

A decree for that amount may be entered, with costs.